# **EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------

JIHSHYR YIH

(Names of Plaintiff(s)/Petitioner(s))

VS

TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY, LTD.

(Names of Defendant(s)/Respondent(s))

-------------------------------------------------------------------

Summons

Index No. _____

To the Person(s) Named as Defendant(s) Above:

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated:  September 20 , 2021
(Date of Summons)

___JihShyr Yih_____
(Plaintiff(s) name - person bringing on lawsuit)
___2474 Trelawn Street_____
(Plaintiff(s) street address)
___Yorktown Heights, NY 10598_____
(Plaintiff(s) city, state, zip)
____914-440-3478_____
(Plaintiff(s) telephone no.)

_Taiwan Semiconductor Manufacturing Company, Ltd.___
(Defendant(s) name - person(s) sued)
_8, Li-Hsin Rd. 6, Hsinchu Science Park,_____
(Defendant(s) street address)
_Hsinchu 300-78, Taiwan_____
(Defendant(s) city, state, zip)

Venue:     Plaintiff(s) designate(s) Westchester County as the place of trial. The basis of this designation is: (Enter County above; then select one category below, listing specific County)

[X]    Plaintiff(s)' Residence in Westchester   County.
       Defendant(s)' Residence in _____ County.
       Other -- Describe: _____.

**NOTE: THIS FORM OF SUMMONS MUST BE SERVED WITH A COMPLAINT**

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF WESTCHESTER

-------------------------------------------------------------x

JIHSHYR YIH

                              Plaintiff,                Index No.

       - against -                               <u>COMPLAINT</u>

TAIWAN SEMICONDUCTOR
      MANUFACTURING COMPANY, LTD.

                             Defendant.
-------------------------------------------------------------x

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff, JihShyr Yih, respectfully shows and alleges as follows:

## NATURE OF CLAIMS

1. Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC'') refused to hire Yih because of discrimination based upon his age, national origin, marital status, or familial status despite of excellent evaluations. TSMC also retaliated against Yih by not only refusing to hire him but also threatening to sue him in order to silence him because of his objections to forbidden practices during the hiring process. TSMC was primarily motivated by explicit excuses or concerns that Yih was too senior or old, about 58, too American, having stayed about 34 years in the States, and married with two children thoroughly American cultured, to relocate and fit in Taiwan as one of the work locations, successfully. On the other hand, TSMC prefers to hire talents *home grown* within Taiwan to appease the society of Taiwan because TSMC, about 80% foreign-owned, uses substantial natural resources, including about 6% of the electricity, of Taiwan with unsustainable annual increases; and produces proportional wastes. The acts of TSMC cause injury to Yih within the State, in violation of the New York State Human Rights Law ("HRL"), New York Executive Law §§ 290, *et seq*.

## THE PARTIES

2. The plaintiff herein, Yih, is a resident of the State of New York. Yih resides at 2474 Trelawn Street, Yorktown Heights, NY 10598. Yih earned his Ph.D. from the Univ. of Michigan. Afterwards, he worked for over two decades at the Thomas J. Watson Research Center ("TJWRC") of the International Business Machines Corporation ("IBM") in the State with responsibilities, including semiconductors, information technology ("IT"), and administration.

3. The defendant herein, TSMC, has a principal place of business at 8, Li-Hsin Rd. 6, Hsinchu Science Park, Hsinchu 300-78, Taiwan. TSMC is a multinational company that manufactures semiconductors or chips for electronic goods, including smart phones, computers, and cars. TSMC has about 43,000 employees globally.

4. TSMC has a fully owned subsidiary and agent, Taiwan Semiconductor Manufacturing Company, North America ("TSMC NA"), headquartered in San Jose, California.

**PERSONAL JURISDICTION**
(Pursuant to the New York State Civil Practice Law and Rules ("CPLR") §302)

5. TSMC or its agent has employees in the State to do business within the State or supply services in the state, including activities with the State Univ. of New York at Albany and IBM.

6. But for the discrimination, Yih would have a regular work location at State Univ. of New York, Albany, or home office at 2474 Trelawn Street, Yorktown Heights, as a TSMC employee to continue and expand the contacts of TSMC in the State. Each employee is substantial in quality.

7. The Court has personal jurisdiction over TSMC pursuant to CPLR §302(a)(1) because Yih has a cause of action arises from that TSMC has employees in the State to do business within the State or supply services in the State.

8. TSMC or its agent solicits business in the State to supply semiconductors or chips.

9. TSMC or its agent engages in other persistent course of conduct in the State.

10. Based on economics figures of personal consumption published by the World Bank and the United States Government, TSMC derives substantial, **over 5% or over 1%**, revenue from TSMC goods used or consumed in the State, depending on whether TSMC goods sold in the United States are used or consumed **solely in this Country or worldwide**, respectively.

11. The Court has personal jurisdiction over TSMC pursuant to CPLR §302(a)(3) because Yih has a cause of action arises from that TSMC commits at least three tortious acts [*see* paragraphs 40, 43, and 48] all causing injury to him within the State, where TSMC regularly does or solicits business, engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed in the State.

12. TSMC or its agent uses real property situated within the State.

13. But for the discrimination, Yih would have used laboratory facilities at the State Univ. of New York, Albany, as a TSMC employee for business, including research.

14. The Court has personal jurisdiction over TSMC pursuant to CPLR §302(a)(4) because Yih has a cause of action arises from that TSMC or its agent uses real property situated within the State.

## ADMINISTRATIVE PROCEDURES

15. The alleged discrimination occurred on or about 10/03/2017. Yih timely filed a complaint to the United States Equal Employment Opportunity Commission ("EEOC") on 10/30/2017 and received the Notice-of-Right-to-Sue letter on 02/05/2018. Yih timely filed a suit on 04/30/2018 as a *pro se* litigant at the United States District Court, Southern District of New York. The case was dismissed on 06/25/2019 for lack of personal jurisdiction. The order was affirmed by the Court of Appeals, 2nd Circuit on 06/17/2020. Yih timely filed a second suit on 06/25/2020 as a *pro se* litigant at the United States District Court, Northern District of California. The case was again dismissed on 10/28/2020 for lack of personal jurisdiction. The order was affirmed by the Court of Appeals, 9th Circuit on 08/26/2021.

16. Yih timely files this action with new evidence.

## CONTACT BETWEEN TSMC AND YIH

17. TSMC retains an agent, *Lighthouse Global Resources* ("LGR") in Singapore for headhunting. LGR has a dedicated TSMC Account Manager and headhunter, Tammy Lee ("Lee").

18. On or about 07/14/2017, LGR headhunter, Jun Huang ("Huang"), contacted Yih for a position titled "Statistical/Predictive Modeling Architect/Leader" in the TSMC Corporate Planning Organization. Huang and Lee each called Yih time and again to discuss TSMC jobs for him to apply.

19. At the time, two personal friends, college classmates, and former TJWRC colleagues of Yih were in the TSMC corporate management team, as Sr. VP Research & Development and VP Corporate Research Chief Technology Officer.

20. Both of the above executives were recruited in the State by TSMC or its agent in the past.

21. On or about 08/02/2017, TSMC Human Resources ("HR") Manager, Wenwei Willie Chang ("Chang"), accompanied by another TSMC HR manager interviewed Yih at his home at night using a Skype video call followed by a telephone call.

22. Yih provided the two aforementioned TSMC executives to Chang as references.

23. Chang asked Yih: "What year did you graduate from [the National Taiwan Univ.], in comparison with [the above executives as references]?", "Where did you serve your [Taiwan] military duty afterwards?" "How many children do you have?", and "Does your wife work?"

24. Yih did not understand why the questions were relevant, and challenged Chang with "Why are you asking these?" Nevertheless, Yih answered that he graduated in 1981, then served as a platoon leader on a remote island in the front, before leaving for the United States in 1983 for graduate studies, and was currently married with two children.

25. Chang also described a second job, which Yih believed to be VP Corporate Planning

Organization ("VP CPO").

26. The TSMC corporate management team has an established practice of having two or more executives for a same job title in overlapping times.

27. Yih is an expert of planning and administration for large organizations. He served as a chief of staff of TJWRC for the management of 550 strong researchers & engineers and over $100 million in annual budgets.

28. On or about 08/07/2017, headhunter Huang confirmed the second job based on needs of TSMC: a) to develop holistic business intelligence and corporate planning for CEO decisions over sales, marketing, customer service, and value chain processes, and b) to transform the existing piecemeal efforts, which the co-CEO's and the Chairman have problems making use of, by Irene Sun ("Sun"), VP CPO, and by Stephen T. Tso ("Tso"), Sr. VP IT Chief Information Officer ("CIO"), and c) to coordinate organizations across the company.

29. On or about 08/07/2017, Chang emailed Yih that TSMC would continue the hiring process, and the next step was to interview with Sun, VP CPO, who was also a Yih's former TJWRC colleague, whose husband was a mentor of Yih at TJWRC.

30. On or about 09/05/2017, Yih also received excellent evaluations from headhunter Huang: "Your skills, experience and knowledge in IT and computer science ... truly caused a heated discussion within TSMC and you also bring us ... credit in TSMC indirectly, they say we are truly good at searching since they can not find anyone [as] good like you [on] their own, …"

31. Headhunter Huang also mentioned a third job in TSMC: "You … will be good and powerful to their IT department so [TSMC] won't lose any chance [that] could help the operation."

32. As expected, on or about 09/25/2017, Tso, Sr. VP CIO, interviewed Yih at his home using a Skype video call. Tso was accompanied by HR Director, Hen-Yih Terance Chao ("Chao"), and IT

Sr. Director, Thomas Chen ("Chen").

33. Tso requested Yih to provide a list of names to be submitted after the interview for reference check. For the time being, Yih gave the name of a college professor ("Professor P") of his to Tso as a reference, stating that Professor P hired Yih as an undergraduate assistant and deemed him his best student, and that Professor P was presently Chief Technology Officer of one of the largest computer manufacturers in the world.

34. Professor P interacts with Yih professionally ever since Yih graduated in 1981.

35. Tso then switched to the following marital and family related questions: "How many children do you have?", "How old are your children?", "What are your children doing now?", "What future schools are your children going to attend?", "Are you married?", and "Does your wife work?"

36. Yih was horrified by Tso's inappropriate questions and a pattern of these forbidden practices by TSMC supervisors in interviews, but managed to answer that Yih was married with two children, aged 23 and 21, still in schools and dependents of his.

37. Yih challenged the above questions by saying: "However, it is not for me to decide what my children want to do in the future," and "why don't you ask them yourself?"

38. Tso abruptly ended the interview by standing up and leaving the video conference room without saying goodbye.

39. The above inquiries are characterized by EEOC as "prohibited practices" and may be regarded as "evidence of intent to discriminate when asked in the pre-employment context."

40. No qualifying questions were asked for this job in the interview. Thus, TSMC committed a *first tortious act* by playing a cruel joke, asking no job qualification questions but rather focusing on protected characteristics, showing no interests of hiring except the intent to discriminate, to an earnest job seeker. The act was extreme and outrageous, causing Yih severe emotional distress.

41. Right after the second interview with TSMC, Yih received an email from headhunter Huang, who was eager to hear how the interview went and expected to hear good news. Yih replied to headhunters Huang and Lee, stating that he felt offended by Tso's inappropriate questions concerning his family.

42. Three days after the interview, Yih nevertheless emailed to TSMC HR Manager, Chang, a list of eleven names for reference check to satisfy Tso's request.

43. On or about 10/03/2017, headhunter Lee called Yih to inform rejections of all jobs with feedback blaming Yih for being "too senior to fit in." Yih feels extremely offended by this explanation, and wrote to headhunters Huang and Lee that he felt discriminated and retaliated against by TSMC. TSMC commits a *second tortious act* by refusing to hire Yih because of the aforementioned unlawful discrimination, causing him emotional distress within the State.

44. Consequently on or about 10/05/2017, TSMC HR Director, Chao, telephoned Yih to hear his concerns and his demand that TSMC correct its ill recruitment practices. Yih is an expert of human resources with experience, including serving as a hiring committee chair of TJWRC.

45. TSMC reported 4,363 human rights cases in 2017, about one in ten employees complained.

46. Shockingly, on or about 10/13/2017, Yih received a letter from an attorney retained by TSMC. This letter explained that Yih was denied employment because "[Yih] ... failed to provide a list of persons for reference check … during the Preliminary Video Interview."

47. The above letter also explained: "The reason [Chang and Tso] asked questions regarding you and your family members is to learn … possible issues …, in considering you and families have stayed in the United States for many years," a fact Yih included in his complaint to EEOC.

48. TSMC commits a *third tortious act* in the above letter, that TSMC retaliates by threatening to sue Yih, "should [Yih] disclose to the media, the public and any other third parties related to the

interview without TSMC's prior approval." Yih never agreed to such secrecy. This tortious act not only violates Yih's First Amendment Rights but also inflicts severe emotional distress by implying a large amount of time and expenses needed to defend a lawsuit, which may frighten away employers so that Yih may never find jobs. This tortious act is beyond all bounds of decency.

49. On or about 10/17/2017, TSMC announced that Tso was to retire on 03/01/2018. The personnel change was disclosed by the headhunters to Yih before the interview with Tso, and was widely rumored and now affirmed on a newspaper article, where J. K. Lin and Chen, replacements of Tso, were hailed as *homegrown talents* within Taiwan [persons having no academic degrees or industry work experiences gained outside Taiwan,] and they were likely to shift spending on homegrown assets, affecting about $10 billion in annual capital spending.

50. In contrast, Yih is a naturalized United States citizen. Yih acquires American values and traits by receiving education, working, and living in this Country since 1983.

51. Yih was recruited by TSMC or its agent for TSMC jobs, including CIO, VP CPO, and Statistical/Predictive Modeling Architect/Leader, with responsibilities to create global initiatives.

52. Yih qualifies for and seeks the above jobs, including a job location in the State.

53. Yih is an IT expert and a recipient of *IBM Corporate Technical Recognition,* shared by fewer than 200 [among about 400,000] employees, based upon his effort in the transformation of the IT infrastructure of the IBM Sales and Distribution Value Chains for having realized over $50 million in cost saving and impacting annual revenue by well over $10 billions.

54. Yih's hiring managers included Morris Chang, Mark Liu, C. C. Wei, Tso, and Sun, who were members of the board of directors and/or the corporate management team.

55. Finally, Yih tried to settle amicably with TSMC without litigation. On or about 04/16/2018, the same attorney declined settlement, but explained that although a professor's name

was given as a reference, TSMC deemed the professor an "unrelated acquaintance" to be a reference.

## FOR A FIRST CAUSE OF ACTION
*(Discrimination Based Upon Age in Violation of HRL)*

56. TSMC treated Yih less favorably based on his age, in violations of HRL by refusing to hire him because he was "too senior to fit in" at about age 58; by rejecting Yih's college professor as a reference and refusing to hire Yih for lack of reference, but for the age discrimination so that the professor appeared to be an acquaintance about 36 years ago, such a reference would normally be accepted; by expressing concerns about his having stayed in America **for many years** would not be able to fit in Taiwan as a work location; by filling an aforementioned job with a person significantly younger and no more qualified than Yih, but not Yih.

## FOR A SECOND CAUSE OF ACTION
*(Discrimination Based Upon National Origin in Violation of HRL)*

57. TSMC treated Yih less favorably based on his national origin, in violations of HRL by refusing to hire him because of concerns that his having stayed **in America for many years** would hinder his relocation to Taiwan as a work location; by filling an aforementioned job with a person not of American national origin, but not Yih.

## FOR A THIRD CAUSE OF ACTION
*(Discrimination Based Upon Marital Status and Familial Status in Violation of HRL)*

58. TSMC treated Yih less favorably based on his marital status and familial status, in violations of HRL by refusing to hire him because of concerns that his spouse and children having stayed in America for many years would have issues accompanying him in Taiwan as a work location; by filling an aforementioned job with a person who was not married with two children having stayed in the United States for many years to relocate to Taiwan, but not Yih.

## A FOURTH CAUSE OF ACTION

*(Retaliation* in *Violation of HRL)*

59. TSMC retaliated against Yih, in violations of HRL by refusing to hire him and by threatening to sue him because of his objections to the inappropriate questions of TSMC supervisors about his age, marital status, and familial status.

## DAMAGES

60. As a result of TSMC's discrimination or retaliation, Yih has and continues to suffer lost wages, lost employment benefits, and lost employment and career opportunities, other pecuniary damages and lost privileges of employment, and costs in the prosecution of his claims. As a result of TSMC's discrimination or retaliation, Yih has and continues to suffer emotional distress, pain and suffering, and physical and mental anguish. TSMC's unlawful conduct was willful, wanton, and egregious and Yih is entitled to punitive damages.

**WHEREFOR**, Yih demands judgment against the defendant in the above damages plus interest, costs and disbursements, together with any other relief the Court finds just and proper.

Dated: September 20, 2021            Signed:  /s/  *JihShyr Yih*
                                     JihShyr Yih
                                     *Pro Se* Plaintiff
                                     2474 Trelawn Street, Yorktown Heights, NY 10598
                                     (914) 440-3478