UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIHSHYR YIH,

                Plaintiff,

    v.

TAIWAN SEMICONDUCTOR
MANUFACTURING COMPANY, LTD.,

                Defendant.

No. 21-CV-8828 (KMK)

OPINION & ORDER

JihShyr Yih
Yorktown Heights, NY
*Pro Se Plaintiff*

Jessica Kastin, Esq.
Rajeev Muttreja, Esq.
Jones Day
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

       JihShyr Yih ("Plaintiff"), proceeding pro se, brings this Action against the Taiwan

Semiconductor Manufacturing Company ("TSMC" or "Defendant"), for discrimination and

retaliation under the New York State Human Rights Law ("NYSHRL") based on Defendant's

failure to hire Plaintiff.  (*See generally* Compl. (Dkt. No. 1-1).)  Before the Court is Plaintiff's

Motion to Remand the Case to State Court (the "Remand Motion"), (*see* Not. of Mot. to Remand

(Dkt. No. 41)), and Defendant's Motion To Dismiss the Complaint pursuant to Federal Rules of

Procedure 12(b)(2) and 12(b)(6) (the "Motion To Dismiss"), (*see* Not. of Mot. To Dismiss (Dkt.

No. 27)).  For the foregoing reasons, the Remand Motion is denied and the Motion To Dismiss is

granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the Complaint and are assumed to be true for purposes of resolving the instant Motion To Dismiss.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

#### 1.  Background to the Parties

Plaintiff is an Asian man, who—at the time relevant to this Action—was approximately 58 years old.  (*See* Compl. ¶ 1.)  While Plaintiff was born outside of the United States and attended university and served in the military in Taiwan, Plaintiff has resided in the United States since 1983 and is a naturalized United States citizen; Plaintiff currently lives in New York state with his spouse and two children.  (*See id.* ¶¶ 1, 2, 23, 24, 50.)  Plaintiff earned his doctorate from the University of Michigan and worked for two decades at the Thomas J. Watson Research Center at IBM where he served as chief of staff, managing a team of 550 researchers and engineers, and had responsibilities that included semiconductors, information technology, and administration.  (*See id.* ¶¶ 2, 27.)  Plaintiff is "an expert of planning and administration for large organizations," an "IT expert," and the recipient of IBM's Corporate Technical Recognition based on his transformation of IBM Sales and Distribution Value Chains' IT infrastructure.  (*Id.* ¶¶ 27, 53.)

TSMC is a multinational company, with approximately 43,000 employees globally, that manufactures semiconductors for electronic goods, including smart phones, computers, and cars.  (*See id.* ¶ 3.)  TSMC is principally based in Hsinchu, Taiwan, though it has a wholly owned subsidiary, Taiwan Semiconductor Manufacturing Company North America, that is headquartered in San Jose, California.  (*See id.* ¶¶ 3, 4.)

## 2.  Plaintiff's Unsuccessful Interview Process with Defendant

On or about July 14, 2017, Jun Huang ("Huang")—a headhunter with Singapore-based Lighthouse Global Resources ("LGR")—contacted Plaintiff about a job opportunity with TSMC as a "Statistical/Predictive Modeling Architect/Leader." (*See id.* ¶¶ 17–18.)  Plaintiff had several phone calls with both Huang and Tammy Lee ("Lee")—LGR's account manager for TSMC—to discuss various positions with TSMC for which Plaintiff may be suited.  (*See id.*)  On or about August 2, 2017, Plaintiff was interviewed for a position at TSMC by two human resources managers, including Wenwei "Willie" Chang ("Chang"), via Skype and telephone.  (*See id.* ¶ 21.)  During the interview, Plaintiff provided two references who were current employees of TSMC, (*see id.* ¶¶ 19, 22), and Chang asked him a number of personal questions, including: "What year did you graduate from the Taiwan National Univ., in comparison with [the references Plaintiff provided]?"; "Where did you serve your Taiwan military duty afterwards?"; "How many children do you have?"; and "Does your wife work?", (*id.* ¶ 23 (alterations omitted)).  Plaintiff did not understand why these questions were relevant and asked Chang why he asked them, but answered the questions anyways.  (*See id.* ¶ 24.)  Over the course of the interview, Chang also described a second position, which Plaintiff believed to be a Vice President Corporate Planning Organization ("VP CPO") role.  (*See id.* ¶ 25.)

On or about August 7, 2017, Huang confirmed the VP CPO role and scheduled a follow-up interview with Irene Sun ("Sun"), a then-current VP CPO at TSMC.  (*See* ¶¶ 28–29.)  On September 5, 2017, Plaintiff received another email from Huang in which Huang reported that executives at TSMC felt positively about Plaintiff's candidacy, and mentioned a third position with TSMC's IT department for which Plaintiff might be qualified.  (*See id.* ¶¶ 30–31.)

On or about September 25, 2017, Plaintiff had a second interview via Skype, this time with Stephen Tso ("Tso"), TSMC's Senior Vice President IT Chief Information Officer; Hen-

Yoh Terance Chao ("Chao"), TSMC's Human Resources Director; and Thomas Chen ("Chen"), TSMC's IT Senior Director. (*See id.* ¶¶ 28, 32.) During the interview, Tso asked Plaintiff to provide a list of references. (*See id.* ¶ 33.) Plaintiff was not able to give a full list at that time, but provided the name of one of Plaintiff's college professors as a reference. (*See id.*) Tso then asked Plaintiff a series of personal questions, including: "How many children to you have?"; "How old are your children?"; "What are your children doing now?"; "What future schools are your children going to attend?"; "Are you married?"; and "Does your wife work?" (*Id.* ¶ 35.) Plaintiff was "horrified by Tso's inappropriate questions and a pattern of these forbidden practices by TSMC supervisors in interviews, but managed to answer" certain questions, challenging others. (*Id.* ¶¶ 36–37.) Tso then "abruptly ended the interview by standing up and leaving the video conference room without saying goodbye." (*Id.* ¶ 38.) Plaintiff characterizes this behavior as "extreme and outrageous"; "a cruel joke" played on Plaintiff, an "earnest job seeker," by TSMC employees who "ask[ed] no job qualification questions but rather focus[ed] on protected characteristics, showing no interests of hiring except the intent to discriminate." (*Id.* ¶ 40.) Directly after the interview, Plaintiff reported to Huang that he was offended by Tso's questions. (*See id.* ¶ 41.)

On about September 28, 2017, Plaintiff provided a list of eleven references to Chang, (*see id.* ¶ 42), but on October 3, 2017, was told by Lee that he had been rejected for all positions by TSMC, (*see id.* ¶ 43). Lee explained that Plaintiff was "too senior to fit in." (*Id.*) Plaintiff was "extremely offended by this explanation," and sent an email to Huang and Lee explaining that he felt he was discriminated against by TSMC. (*Id.*) On October 5, 2017, Chao called Plaintiff to hear Plaintiff's concerns; Plaintiff demanded that TSMC "correct its ill recruitment practices." (*Id.* ¶ 44.)

On October 13, 2017, Plaintiff received a letter from TSMC's attorney in which TSMC explained that Plaintiff was not hired because he "failed to provide a list of persons for reference check during the Preliminary Video Interview" and that Chang and Tso asked Plaintiff "questions regarding [Plaintiff] and [his] family members . . . to learn possible issues, in considering [that] [Plaintiff] and [his family] have stayed in the United States for many years." (*Id.* ¶¶ 46–47 (alterations omitted).)  The letter also warned Plaintiff not to "disclose to the media, the public[,] and any other third parties [any information] related to the interview without TSMC's prior approval."  (*Id.* ¶ 48.)

### 3.  Plaintiff's Previous Legal Action Against Defendant

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 30, 2017, and received a right-to-sue letter on February 5, 2018.  (*See id.* ¶ 15.)  Plaintiff originally filed suit in the Southern District of New York on April 30, 2018; this case was assigned to Judge Cathy Seibel.  (*See id.*)  This suit was dismissed on June 25, 2019 for lack of personal jurisdiction, *see Yih v. Taiwan Semiconductor Manufacturing Co.*, No. 18-CV-3844, 2019 WL 2578306 (S.D.N.Y. June 24, 2019) ("*Yih I*"), which was affirmed by the Second Circuit via summary order on June 17, 2020, *see Yih v. Taiwan Semiconductor Manufacturing Co.*, 815 F. App'x 571 (2d Cir. 2020) ("*Yih II*").  Plaintiff then filed another lawsuit on June 25, 2020, this time in the Northern District of California.  (*See* Compl. ¶ 15.)  This suit was again dismissed for lack of personal jurisdiction, *see Yih v. Taiwan Semiconductor Manufacturing Co.*, No. 20-CV-4184, 2020 WL 6290377 (N.D. Cal. Oct. 27, 2020) ("*Yih III*"), which was affirmed by the Ninth Circuit via summary order on August 26, 2021, *see Yih v. Taiwan Semiconductor Manufacturing Co.*, 857 F. App'x 318 (9th Cir. 2021) ("*Yih IV*").

B.  Procedural History

Plaintiff originally filed the instant Complaint in the New York Supreme Court for the County of Westchester on September 20, 2021.  (*See* Compl.)  On October 28, 2021, Defendant filed a Notice of Removal, removing the Action to this Court on the basis of this Court's diversity jurisdiction under 28 U.S.C. § 1332.  (*See generally* Not. of Removal (Dkt. No. 1).)  In the Notice of Removal, Defendant explained that removal was timely because while Defendant had received Plaintiff's Complaint via mail, this attempt at service was defective; thus, Defendant argued that its time to remove had not yet begun to run.  (*See id.* ¶¶ 7–12.)

On November 4, 2021, Defendant file a pre-motion letter in anticipation of filing a motion to dismiss.  (*See* Dkt. No. 11.)  After receiving a response from Plaintiff, (*see* Dkt. No. 12), the Court set a briefing schedule, (*see* Dkt. No. 13).  On December 10, 2021, Defendant filed its Motion To Dismiss and ancillary papers.  (*See* Not. of Mot. To Dismiss; Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s MTD Mem.") (Dkt. No. 28); Decl. of Wenwei Chang in Supp. of Mot. To Dismiss (Dkt. No. 29); Decl. of Hen-Yih Chao in Supp. of Mot. To Dismiss (Dkt. No. 30); Decl. of Chuan-Cheng Hung in Supp. of Mot. To Dismiss (Dkt. No. 31).) Plaintiff filed his Opposition on January 10, 2022, (*see* Decl. of JihShyr Yih in Opp'n to Mot. To Dismiss (Dkt. No. 36); Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s MTD Mem.") (Dkt. No. 37)), to which Defendant replied on January 31, 2022, (*see* Def.'s Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s MTD Reply Mem.") (Dkt. No. 40)).

Meanwhile, on November 16, 2021, Plaintiff filed a pre-motion letter in anticipation of filing a motion to remand, (*see* Dkt. No. 15), which Plaintiff amended after receiving a response from Defendant, (*see* Dkt. Nos. 17–18).  After receiving a response from Defendant to Plaintiff's amended pre-motion letter, (*see* Dkt. No. 19), the Court scheduled a pre-motion conference, (*see* Dkt. No. 23).  At the same time, Plaintiff also sought a Clerk's Certificate of Default, (*see* Dkt.

Nos. 20, 21, 24), which the Court denied, explaining that the Court had set a deadline for Defendant's then-anticipated motion to dismiss, which had not yet passed, (*see* Dkt. No. 25). After Defendant filed its Motion To Dismiss, Plaintiff again sought a Clerk's Certificate of Default, (*see* Dkt. No. 34), which the Court again denied, explaining that Defendant was not in default, (*see* Dkt. No. 35). The Court held a pre-motion conference on Plaintiff's anticipated motion to remand on January 24, 2022, (*see* Dkt. (minute entry for Jan. 24, 2022)), and set a briefing schedule, (*see* Dkt. No. 39). On February 7, 2022, Plaintiff filed his Remand Motion. (*See* Not. of Remand Mot. (Dkt. No. 41); Pl.'s Mem. of Law in Supp. of Remand Mot. ("Pl.'s Remand Mem.") (Dkt. No. 42).) Defendant filed its Opposition on February 21, 2022, (*see* Def.'s Mem. of Law in Opp'n to Remand Mot. ("Def.'s Remand Mem.") (Dkt. No. 43)), to which Plaintiff replied on March 7, 2022, (*see* Pl.'s Reply Mem. of Law in Supp. of Remand Mot. ("Pl.'s Reply Remand Mem.") (Dkt. No. 44); Decl. of JihShyr Yih in Supp. of Remand Mot. (Dkt. No. 45)). After seeking and receiving permission to do so, (Dkt. Nos. 46, 48), Defendant then filed a Sur-Reply in further opposition to Plaintiff's Remand Motion on March 28, 2022, (*see* Def.'s Sur-Reply Mem. of Law in Opp'n to Remand Mot. ("Def.'s Sur-Reply Remand Mem.") (Dkt. No. 49)).

## II.  Motion to Remand

### A.  Standard of Review

The removal of civil actions from state court to federal court is governed by 28 U.S.C. § 1446(b)(1), which provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

7

28 U.S.C. § 1446(b)(1).  Thus, "[t]o remove a case to federal court, a defendant must file a notice

of removal within 30 days of receiving the summons and complaint."  *Fernandez v. Hale Trailer*

*Brake & Wheel*, 332 F. Supp. 2d 621, 622 (S.D.N.Y. 2004) (citing 28 U.S.C. § 1446(b)(1) and

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348–49 (1999)).  "[T]he

propriety of removal is to be determined by the pleadings at the time of removal."  *Fed. Ins. Co.*

*v. Tyco Int'l*, 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006); *In re Methyl Tertiary Butyl Ether*

*Prods. Liab. Litig.*, 399 F. Supp. 2d 356, 363 (S.D.N.Y. 2005) ("A court must thus consider the

complaint at the time of removal to determine if removal was appropriate in the first place.");

*Vasura v. Acands*, 84 F. Supp. 2d 531, 536 (S.D.N.Y. 2000) ("If the removal was not proper in

the first instance, the state court was never divested of jurisdiction and the federal court

consequently has no jurisdiction to exercise.").

      Receipt of the initial pleadings by the defendant's attorney triggers the 30-day removal

period under § 1446(b).  *See Mintz & Gold LLP v. Daibes*, No. 15-CV-1218, 2015 WL 2130935,

at *4–5 (S.D.N.Y. May 6, 2015) (holding that receipt of state court complaint by counsel for

defendant triggered 30-day removal period under § 1446(b)); *Cohen v. Reed*, 868 F. Supp. 489,

495–96 (E.D.N.Y. 1994) (same and rejecting claim that receipt by defendant personally was

required under § 1446(b)); *see also Webb v. Harrison*, No. 14-CV-5366, 2015 WL 500179, at

*3–4 (S.D.N.Y. Feb. 5, 2015) (treating date on which defense counsel received summons as date

from which 30-day removal clock started ticking).  Moreover, receipt of mail by an attorney's

office constitutes receipt of mail by a specific attorney.  *See Tiberio v. Allergy Asthma*

*Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) ("It is well established that 'notice to

an attorney's office which is acknowledged by a representative of that office qualifies as notice

to the client.'" (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93 (1990))).

Federal courts construe questions of removal narrowly, "resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2014) (quotation marks omitted); *see also O'Reilly v. Mackris*, 556 F. Supp. 3d 166, 169 (E.D.N.Y. 2021) (same); *Fed. Ins. Co.*, 422 F. Supp. 2d at 368 (explaining that "[o]ut of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute narrowly, resolving any doubts against removability" (quotation marks omitted)). Thus, if a plaintiff challenges the removal through a motion to remand, the party seeking to remove the case bears the burden of establishing that removal is proper. *See Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) (citing *United Food & Com. Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)); *Fouad v. Milton Hershey Sch. & Sch. Tr.*, 523 F. Supp. 3d 648, 652 (S.D.N.Y. 2021) ("[The] [d]efendants, as the removing parties, 'bear the burden of demonstrating the propriety of removal.'" (alteration omitted) (quoting *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004))).

## B. Analysis

Plaintiff argues that the case must be remanded back to state court because Defendant's Notice of Removal was untimely. (*See* Pl.'s Remand Mem. 3.) Specifically, Plaintiff argues that he caused the Complaint to be mailed to Defendant on September 20, 2021, which gave Defendant a total of 33 days, including an extra 3 days due to the mailing, to file the Notice of Removal under § 1446(b)(1). (*See id.*) Therefore, Defendant was required to file the Notice of Removal by October 23, 2021, and because Defendant did not file the Notice of Removal until October 28, 2021, the removal was untimely. (*See id.*) Defendant argues in opposition that Plaintiff relies on a misreading on § 1446(b)(1), which states that the clock begins for purposes of filing a notice of removal when the initial pleading is *received* by the defendant, unless the

pleading is not required to be served on the defendant.  (*See* Def.'s Remand Mem. 2.)  Defendant

explains that because Plaintiff does not argue that the pleading was not required to be served on

Defendant, Defendant had 30 days from its receipt of the Complaint on September 30, 2021 to

file the Notice of Removal; Defendant's October 28, 2021 removal was thus timely.  (*See id.*)

Defendant also argues that, in any event, Defendant has to date not been properly served, so

formally speaking, the clock never even began for purposes of removal.  (*See id.* at 3–6.)

   The Court agrees with Defendant.  Plaintiff's argument rests on a reading of § 1446 that

is not supported by either the plain language of the statute or by principles of statutory

interpretation.  Plaintiff reads § 1446 as providing that the notice of removal must be filed

"within 30 days after the receipt by the defendant [of the complaint] . . . or within 30 days after

the service of summons upon the defendant . . . whichever is shorter."  (*See* Pl.'s Remand Mem.

3 (quoting 28 U.S.C. § 1446(b)(1) and emphasizing only this language).)  But in emphasizing

only this language, Plaintiff ignores the fact that statute's two clauses are disjunctive.  As

Defendant cogently explains: "[u]nder federal law, a notice of removal must be filed within the

'shorter' of (1) '30 days after the receipt by the defendant . . . of a copy of the initial pleading' *or*

(2) '30 days after the service of summons upon the defendant if such initial pleading . . . is not

required to be served on the defendant."  (Def.'s Remand Mem. 2 (emphasis altered) (alterations

in original) (quoting 28 U.S.C. § 1446(b)(1)).)  Because Plaintiff does not argue that the

Complaint was not required to be served on Defendant, only the first clause of § 1446 applies,

and Defendant was required to file the Notice of Removal "within 30 days after *the receipt by*

*the defendant* . . . of a copy of the initial pleading."[1]  28 U.S.C. § 1446(b)(1) (emphasis added);

---

[1] And to be clear, under New York law, the Complaint was required to be served on
Defendant.  *See* N.Y. C.P.L.R. § 306-b ("Service of the summons and complaint, summons with

*see also Webb*, 2015 WL 500179, at *4 (finding notice of removal to be timely under § 1446(b)(1) where "[the] [d]efendants filed the [n]otice [of removal] . . . within thirty days of receipt of the complaint"). There is no dispute that Defendant received the Complaint on September 30, 2021—Plaintiff's process server attests to this fact, (*see* Proof of Service ¶ 4 (Dkt. No. 33))—thus, Defendant had until October 30, 2021 to file the Notice of Removal. Defendant's October 28, 2021 filing was within this window and therefore was timely.

The Court need not address Defendant's argument that the Complaint was not properly served, (*see* Defs.' Remand Mem. 3–6), to dispose of the Remand Motion; Defendant's Notice of Removal was timely regardless of whether Defendant was properly served. Nor need the Court address Plaintiff's numerous arguments raised in his Reply, (*see generally* Pl.'s Reply Remand Mem. (raising arguments concerning, inter alia, the Hague Convention, Taiwan law, and Defendant's receipt of service via mail in the California lawsuit)), which similarly do not affect the disposition of the Remand Motion.[2]

Accordingly, Plaintiff's Remand Motion is denied.

### III. Motion to Dismiss

#### A. Standard of Review

Defendant has moved to dismiss the Complaint under both Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. In light of Plaintiff's

---

notice, third-party summons and complaint, or petition with a notice of petition or order to show cause *shall be made* within one hundred twenty days after the commencement of the action or proceeding." (emphasis added)).

[2] The Court does, however, take a moment to wholly reject Plaintiff's baseless claims of perjury against Defendant's counsel. (*See* Pl.'s Remand Mem. 4; Pl.'s Reply Remand Mem. 4–5.) Defense counsel's conduct and statements before this Court in this Action have been entirely proper. Plaintiff is advised that if, in the future, he wishes to claim that a party or attorney has engaged in perjury or any misconduct, he may do so only if there is evidence to support such a claim.

pro se status, in addressing both bases for Defendant's motion to dismiss, the Court will "construe[] [Plaintiff's] [Complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

"'A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question' and must dismiss the action against any defendant over whom it lacks personal jurisdiction." *Romero v. 88 Acre Foods, Inc.*, — F. Supp. 3d — , 2022 WL 158686, at *2 (S.D.N.Y. Jan. 18, 2022) (quoting *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017)); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").  The Court will thus address Defendant's Rule 12(b)(2) motion first.

### 1.  Rule 12(b)(2)

"[R]esolution of a [Rule 12(b)(2)] motion to dismiss for lack of personal jurisdiction made in the Southern District of New York requires a two-step analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  "First, the court must determine if New York law would confer upon its courts the jurisdiction to reach the defendant," such as under the New York long-arm statute.  *Id.*  Second, if such a basis for

12

jurisdiction exists, "the court must then determine whether the extension of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment." *Id.*

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court maintains jurisdiction over the defendant. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). However, "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (alteration in original) (italics, citation, and quotation marks omitted); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) ("Where . . . a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." (quotation marks omitted)). "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997). A plaintiff may "make this showing through his own affidavits and supporting materials[,] containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alterations in original) (citations and quotation marks omitted).

While a court may consider materials beyond the pleadings, the court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*,

616 F.3d 158, 163 (2d Cir. 2010)); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–

80 (2d Cir. 1993) ("[W]here the issue is addressed on affidavits, all allegations are construed in

the light most favorable to do the plaintiff and doubts are resolved in the plaintiff's favor,

notwithstanding a controverting presentation by the moving party."); *Harrington Glob.*

*Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, — F. Supp. 3d — , 2022 WL 409089, at

*2 (S.D.N.Y. Feb. 9, 2022) ("In evaluating whether [the] [p]laintiff has made out a prima facie

case of personal jurisdiction, a court must construe the pleadings and affidavits in the light most

favorable to plaintiffs, resolving all doubts in their favor." (quotation marks omitted)).  However,

"[p]leadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a

'legal conclusion couched as a factual allegation' do not meet this burden." *Pruthi v. Empire*

*City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting

*Janzini*, 148 F.3d at 185); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507

(2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the plaintiff's

favor" in considering Rule 12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l*

*Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

### 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  When a plaintiff proceeds pro se, however, the Court may consider "materials

outside the complaint to the extent that they are consistent with the allegations in the

complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y.

Aug. 2, 2013) (quotation marks omitted).

### B.  Analysis

Plaintiff brings multiple causes of action under the NYSHRL: (1) discrimination based

upon age, (*see* Compl. ¶ 56); (2) discrimination based upon national origin, (*see id.* ¶ 57);

(3) discrimination based upon marital and familial status, (*see id.* ¶ 58); and (4) retaliation, (*see

id.* ¶ 59).  Defendant argues that the Complaint must be dismissed in its entirety because:

(1) Plaintiff is collaterally estopped from arguing that Defendant is subject to this Court's

jurisdiction based on *Yih I*, (*see* Def.'s MTD Mem. 8–11); (2) even absent preclusion, Plaintiff

has failed to establish that Defendant is subject to this Court's jurisdiction, (*see id.* at 11–22);

and (3) in the alternative, Plaintiff has failed to state a cognizable claim under the NYSHRL,

including because his claims are now time-barred, (*see id.* at 22–25).

For the reasons that follow, the Court agrees with Defendant that Plaintiff is precluded

from relitigating the issue of whether this Court can exercise personal jurisdiction over

Defendant because this issue was conclusively decided in *Yih I*.  Because the Court therefore

lacks personal jurisdiction over Defendant, the Court cannot (and need not) decide Defendant's

Rule 12(b)(6) Motion.  *See Sinochem*, 549 U.S. at 430–31.

### 1.  Collateral Estoppel Standard

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to

its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of

action involving a party to the first case," which serves the goals of "reliev[ing] parties of the

cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and, by preventing

inconsistent decisions, encourag[ing] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90,

94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).  And, "issue preclusion applies to jurisdictional determinations, including those of personal jurisdiction, notwithstanding that a dismissal for lack of personal jurisdiction does not constitute an application 'on the merits' for claim preclusion (i.e., res judicata) purposes." *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019); *see also Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." (citing *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940) and *Stoll v. Gottlieb*, 305 U.S. 165 (1938))); *see also Stengel v. Black*, 486 F. App'x 181, 183 (2d Cir. 2012) (summary order) ("Although a dismissal for lack of jurisdiction is not an adjudication on the merits of a claim, such a dismissal precludes re-litigation of the issue it decided." (citation omitted)).

"The law governing the doctrine of res judicata in a diversity action is 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (italics omitted) (quoting *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)); *see Ryan v. N.Y. Tel. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984) (describing the "doctrine of collateral estoppel" as "a narrower species of res judicata" (italics omitted)); *see also Ananta Grp., Ltd. v. Jones Apparel Grp., Inc.*, 230 F. App'x 39, 40 (2d Cir. 2007) (summary order) (explaining that "New York's law of issue preclusion . . . applies in this diversity suit").  "Under New York law, 'the doctrine of collateral estoppel [or issue preclusion] precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and deciding against that party or those in privity, whether or not the tribunals or causes of action are the same.'" *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (quoting *Ryan*, 467 N.E.2d at 490).  "There

are two main requirements for the application of collateral estoppel to an issue: (1) 'there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Id.* (alteration omitted) (quoting *Schwartz v. Pub. Adm'r of Bronx Cnty.*, 246 N.E.2d 725, 729 (N.Y. 1969)); *see also City of New York v. Welsbach Elec. Corp.*, 878 N.E.2d 966, 968 (N.Y. 2007) ("Th[e] doctrine [of res judicata] applies only if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action" (quotation marks omitted)). "The party seeking to invoke the doctrine bears the burden of establishing its applicability." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010); *accord Luscher ex rel. Luscher v. Arrua*, 801 N.Y.S.2d 379, 381 (App. Div. 2005).

### 2.  Application of Collateral Estoppel

At the outset, it is helpful to recount Plaintiff's allegations and Judge Seibel's holdings in *Yih I*.  In *Yih I*, Plaintiff brought claims for (1) discrimination on the basis of sex and national origin under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq.; (2) discrimination on the basis of age under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq.; and (3) discrimination under the NYSHRL based on the same course of conduct alleged here.  *See Yih I*, 2019 WL 2578306, at *3.  In attempting to demonstrate that the Court had personal jurisdiction over TSMC, Plaintiff alleged that TSMC had substantial contact with the United States in general and New York specifically in various ways, including via the fact that: (1) multiple prominent members of TSMC leadership are American, including the Chairman, a co-CEO, four out of ten members of the Board of Directors, and at least five executives on the management team; (2) seven of TSMC's top shareholders are American, including its largest shareholder (holding 20.6% of TSMC's shares), the American Depository Receipt-TSMC, Ltd.

18

("ADR-TSMC"), which is, in turn, controlled by New York-based Citibank; (3) in 2017, approximately 0.003% of TSMC's total revenue (representing approximately $1 million in business) came from New York-based customers; (4) TSMC operates two U.S.-based subsidiaries, TSMC North America and WaferTech LLC, which produced $22 billion of TSMC's $32 billion net revenue in 2017; and (5) TSMC recruits employees from New York and certain TSMC employees could work remotely from New York. *See id.* at *1, *4–8. Judge Seibel ultimately found that the court could not exercise either general or specific jurisdiction over Defendant, finding, inter alia, that (1) "TSMC does not actively solicit business in New York, and only a miniscule amount of its business comes from New York"; (2) TSMC's largest shareholder, ADR-TSMC, was in fact just a depository and thus could not impute New York presence to TSMC; (3) TSMC did not engage in regular recruitment of New York residents; (4) had Plaintiff been hired by TSMC, his job would have been located in Taiwan; and (5) TSMC has no "offices, bank accounts, or property in New York," "has no employees in New York," and "all of its employees within the Business Operations Division and the IT Division (the two divisions for which Plaintiff interviewed) work in Taiwan or China." *Id.* at *4–7. In sum, Judge Seibel found that TSMC neither solicits business nor engages in other activities of substance in the state sufficient to confer general jurisdiction and that the single "instance where an out-of-state Defendant sent communications into New York to solicit Plaintiff to perform non-New York services" was insufficient to confer personal jurisdiction under CPLR § 302(a)(1). *Id.* at *5, *8. Judge Seibel went on to explain that "the problem here is not one that better pleading could cure," and did not grant Plaintiff leave to amend. *See id.* at *9.

Plaintiff's allegations, causes of action, and theories of personal jurisdiction in the instant Action are not identical to those advanced in *Yih I* on their face, but Plaintiff's efforts at artful

pleading do not change the fact that this Action is fundamentally identical to *Yih I*. Plaintiff argues that the personal jurisdiction question presented in this Action is not identical to the personal jurisdiction question presented in *Yih I*, because "Plaintiff [has] provide[d] new facts about TSMC's or its agent's contacts with New York in the Complaint" and "raises personal jurisdiction issues invoking CPLR [§§] 302(a)(3) and (a)(4) for the first time in this [A]ction" and "the issue invoking CPLR [§] 302(a)(1) is also new." (Pl.'s MTD Mem. 10 (footnote omitted); *see also, e.g.*, Compl. ¶¶ 5–14.) But Plaintiff's "new" evidence and "new" theories of personal jurisdiction necessarily depend on undoing findings made by Judge Seibel in *Yih I*.

Plaintiff argues that he has now alleged that: (1) "TSMC or its agent has employees in the State to do business within the State or supply services in the state, including activities with the State Univ. of New York at Albany and IBM"; (2) "TSMC or its agent regularly does or solicits business in the State to supply semiconductors"; (3) "TSMC derives substantial . . . revenue from TSMC goods used or consumed in the State"; (4) "TSMC commit[ed] at least three tortious acts all causing injury to [Plaintiff] within the State, where TSMC regularly does or solicits business, engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed in the State"; and (5) "TSMC or its agent uses real property situated within the State." (Pl.'s MTD Mem. 10 (first alteration in original) (quotation marks omitted).) Plaintiff urges that these "new" allegations provide bases for personal jurisdiction under provisions of New York's long-arm statute not addressed by Judge Seibel. (*See id.*) But regardless of Plaintiff's characterizations, success on any of these theories of personal jurisdiction ultimately depends on relitigating an issue that Judge Seibel has already decided, which is specifically prohibited by the doctrine of collateral estoppel. *See, e.g.*, *Winters v. Lavine*, 574 F.2d 46, 56 (2d Cir. 1978) ("In New York [collateral estoppel] bars the relitigation of any issue which would be decisive in the

later action and which was litigated and decided against the litigant in the earlier action.").  For example, Judge Seibel has already determined that TSMC does not have any employees in New York, *Yih I*, 2019 WL 2578306, at *7, thus, Plaintiff is precluded from pressing any theory of personal jurisdiction that depends on a finding that "TSMC or its agent has employees in the State to do business within the State or supply services in the state."  (Pl.'s MTD Mem. 10 (quotation marks omitted) (quoting Compl. ¶ 5).)  Similarly, Judge Seibel has already determined that "TSMC does not actively solicit business in New York, and only a miniscule amount of its business comes from New York," *Yih I*, 2019 WL 2578306, at *5, thus, Plaintiff is precluded from pressing any theory of personal jurisdiction that depends on a finding that "TSMC or its agent regularly does or solicits business in the State" or that "TSMC derives . . . substantial revenue from TSMC goods used or consumed in the State."  (Pl.'s MTD Mem. 10 (alteration in original) (quotation marks omitted) (quoting Compl ¶¶ 8, 10).)  Indeed, Judge Seibel's observation that "the problem here is not one that better pleading could cure" was apt.  *Yih I*, 2019 WL 2578306, at *8.  The Court therefore finds that there is an "identity of issue[s]" between *Yih I* and this Action.  *Burgos*, 14 F.3d at 792 (quotation marks omitted).

Further, Plaintiff does not argue that he did not have a full and fair opportunity to contest Judge Seibel's decision in *Yih I*, (Pl.'s MTD Mem. 10), and the Court finds that he indisputably did: Judge Seibel's decision in *Yih I* was preceded by a pre-motion conference in which Judge Seibel granted Plaintiff leave to amend his complaint to address issues raised by both Defendant and the Court at the conference, *see Yih I*, 2019 WL 2578306, at *3; Judge Seibel allowed Plaintiff to submit additional facts in connection with Defendant's motion to dismiss, *see id.* at *9; and Plaintiff appealed *Yih I* to the Second Circuit, where Judge Seibel's decision was affirmed, *see Yih II*, 815 F. App'x 571.

At bottom, while Plaintiff may have alleged "new" facts or cited different statutory provisions in an attempt to establish this Court's personal jurisdiction over Defendant, the issues decided in *Yih I* are determinative of the issues raised in this Action.  Plaintiff is therefore barred from arguing that this Court has jurisdiction over Defendant by collateral estoppel.  *See Eastman Kodak Co. v. Asia Optical Co.*, No. 11-CV-6036, 2012 WL 2148198, at *4 (S.D.N.Y. June 13, 2012) (finding collateral estoppel to apply where "[t]here are . . . 'no significant factual differences' between the personal jurisdiction litigated [in the previous action] and presented to this [c]ourt" (quoting *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 68 (N.Y. 1985))), *aff'd*, 518 F. App'x 23 (2d Cir. 2013); *Wolff v. City of N.Y. Fin. Servs. Agency (FISA)*, 939 F. Supp. 258, 265 (S.D.N.Y. 1996) ("New York principles of collateral estoppel prevent plaintiffs who have had their fair day in court from relitigating the same factual issues in any later suit against the state parties.  Plaintiffs may not evade these principles by dressing up claims they have litigated and lost [as new claims]." (citation omitted)).

### III.  Conclusion

For the foregoing reasons, Plaintiff's Remand Motion is denied and Defendant's Motion To Dismiss is granted.  Because there is no way for Plaintiff to plead around the fact that this Court's lack of personal jurisdiction over Defendant has already been conclusively decided, and amendment would therefore be futile, the Court dismisses Plaintiff's Complaint with prejudice.  *See Platform Real Estate v. U.S. Sec. & Exch. Comm'n*, No. 19-CV-2575, 2020 WL 4482632, at *5 (S.D.N.Y. Aug. 3, 2020) ("Where a plaintiff's claims are barred by collateral estoppel and further amendment would be futile, dismissal with prejudice is warranted." (citation omitted)).

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:   May 19, 2022
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge